UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**RONALD GERALD METCALF, JR.**   CIVIL ACTION NO. 22-0985

SECTION P

VS.

JUDGE TERRY A. DOUGHTY

**R.C. TINDALL, ET AL.**   MAG. JUDGE KAYLA D. MCCLUSKY

**REPORT AND RECOMMENDATION**

Plaintiff Ronald Gerald Metcalf, Jr., a prisoner at Ouachita Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately April 4, 2022, under 42 U.S.C. § 1983. He names the following defendants: Deputy R.C. Tindall, Monroe Police Department, Deputy Terrence Levelle Ervin, Judge W. Caldwell, Attorney Cleophus Washington, Assistant District Attorney Charlotte Farshian, and the Ouachita Parish District Attorney's Office.[1] For reasons below, the Court should stay Plaintiff's false arrest claim and dismiss Plaintiff's remaining claims.

**Background**

Plaintiff alleges that Deputy Ervin arrested him on September 25, 2021, and charged him with home invasion. [doc. #s 1; 11, p. 3]. He claims that when he was arrested: (1) he was "thrown in a choke hold and put to the asphalt"; (2) he was not allowed to make a statement; and (3) he was "denied [his] *Miranda* rights." [doc. # 1]. He faults Deputy Ervin for the first and third claims above, alleging that Ervin "is guilty of abusive handling upon arrest" and "failure to read *Miranda* rights[.]" [doc. # 11, p. 3].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

In an amended pleading, Plaintiff explains that Ervin arrived at an apartment in Monroe, Louisiana, where he found Plaintiff on the ground. [doc. # 14, p. 3]. Ervin called Plaintiff to his patrol car, searched Plaintiff, and found a knife in Plaintiff's pocket. *Id.* Plaintiff claims: "Upon finding this knife, he then grabbed [Plaintiff] around the neck and throat and then violently slammed [Plaintiff] to the asphalt." *Id.* Ervin handcuffed Plaintiff and placed him in the patrol car. *Id.*

Plaintiff claims that Ervin refused to "gather" exculpatory evidence from the scene of Plaintiff's alleged crime. [doc. # 11, p. 3]. He informed Ervin of "'exculpatory' evidence (his belongings) left back at the apartment," and Ervin responded, "It will be there when you get out." [doc. #s 11, p. 3; 14, p. 3]. Plaintiff suggests that the failure to obtain exculpatory evidence caused him "severe monetary, emotional, and spiritual damage." *Id.*

Plaintiff claims that Judge Caldwell told him in court that "the arresting officer was not responsible for the gathering of 'exculpatory' evidence . . . ." *Id.* (emphasis removed).

Plaintiff claims that he has "been denied competent legal assistance by [his] attorney[,]" Cleophus Washington. [doc. #s 1; 14, p. 4]. He claims that Washington: (1) failed to file necessary motions for his defense, which forced him to "take matters into [his] own hands"; (2) has only seen him three "times at the courthouse for only 5 to 10 minutes each time"; (3) has not asked Plaintiff to recount his version of events; (4) has only presented the District Attorney's plea offer; and (5) agrees to continuances. [doc. #s 1; 14, p. 4].

Plaintiff claims that Deputy R.C. Tindall failed to mail his completed in forma pauperis application to this Court. [doc. #s 5, p. 3; 14, p. 5].

Plaintiff claims that the Ouachita Parish District Attorney's Office is violating his right to a speedy trial. [doc. # 14, p. 6]. He claims that Assistant District Attorney Farshian sought numerous continuances "instead of allowing 'due process' to take effect . . . ." *Id.*

Plaintiff asks the Court to investigate "the actions taken in [his] case and help provide a just and fair decision . . . ." [doc. # 5, p. 4]. He also seeks compensation for lost wages, lost opportunities, suffering, and emotional and spiritual damage. [doc. #s 11, p. 4; 14, pp. 3, 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

contentions are clearly baseless. *Id.*

  A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

  In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Failure to Read *Miranda* Rights

Plaintiff claims that Deputy Ervin did not read him his rights under *Miranda v. Arizona*, 384 U.S. 436, 439 (1966). The officer's alleged failure to read *Miranda* warnings, however, did not violate Plaintiff's constitutional rights and "cannot be grounds for a § 1983 action." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003); *see Foster v. Carroll Cty.*, 502 F. App'x 356, 358 (5th Cir. 2012). A "violation of the *Miranda* rule[]" does not provide "a basis for a claim under § 1983." *Vega v. Tekoh*, 2022 WL 2251304, at *4 (U.S. June 23, 2022). The Court should dismiss this claim.

## 3. Making a Statement Upon Arrest

Plaintiff claims that either before or after his arrest, he was not allowed to "make a statement . . . ." [doc. # 1]. Plaintiff, however, does not identify a responsible defendant. For this reason alone, the Court should dismiss his claim.

5

Further, even if Plaintiff identified a responsible defendant, his claim is entirely conclusory. For instance, he does not allege that any defendant forced him to remain silent. Nor does he present a false arrest claim by this allegation, considering he does not identify what he wanted to state or otherwise argue that he could have dispelled probable cause for his arrest if he was permitted to "make a statement." *See Quinn v. Roach*, 326 F. App'x 280, 286 (5th Cir. 2009) (examining, where a Plaintiff alleged *inter alia* that an officer "did not attempt to get [the plaintiff's] side of the story[,]" whether there was probable cause to arrest the plaintiff).

The undersigned highlights that the United States Supreme Court recognized a "right to testify on one's own behalf" and to present one's "own version of events in his own words." However, the Supreme Court stated that the right exists at "a <u>criminal trial</u> . . . ." *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). In addition, the Supreme Court held in *Miranda*, 384 U.S. at 478, that an individual has the right to remain *silent* when "taken into custody or otherwise deprived of his freedom by the authorities in any significant way . . . ." In other words, the Supreme Court recognized that under certain circumstances, one has the right *not* to make a statement.

The Court should dismiss this claim.

**4. Exculpatory Evidence**

Plaintiff claims that Deputy Ervin refused to "gather" exculpatory evidence from the scene of Plaintiff's alleged crime. [doc. # 11, p. 3].

To the extent Plaintiff faults Ervin for conducting a negligent investigation, he fails to state a plausible claim. There is no freestanding right to be free from a negligent or even reckless investigation. *Hernandez v. Terrones*, 397 F. App'x 954, 966 (5th Cir. 2010). Likewise, there is no freestanding claim that officers ignored exculpatory evidence. *Id.* Rather, these

allegations may only color a false-arrest/malicious-prosecution claim. *Id.* ("We did not hold that the negligent investigation and ignoring of exculpatory evidence in *Sanders* were freestanding constitutional violations, rather, they were conduct supporting Sanders' claims for false arrest and illegal detention.").

Here, to the extent Plaintiff seeks to raise a "freestanding" claim of a negligent investigation, reckless investigation, ignoring exculpatory evidence unmoored from any allegation of false arrest/malicious prosecution, the Court should dismiss the claim.[3]

**5. False Arrest**

As above, Plaintiff claims that Deputy Ervin refused to "gather" exculpatory evidence from the scene of Plaintiff's alleged crime. [doc. # 11, p. 3]. He informed Ervin of "'exculpatory' evidence (his belongings) left back at the apartment," and Ervin responded, "It will be there when you get out." [doc. #s 11, p. 3; 14, p. 3]. Plaintiff describes his arrest for home invasion as "wrongful." His charge remains pending.

If Plaintiff is convicted of his pending charge, he may not be entitled to seek relief for his false arrest claim until the conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477 (1994) (holding that a successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

While the rule in *Heck* does not extend to pending criminal matters, a successful false arrest claim, under Plaintiff's allegations, could necessarily imply the invalidity of any future

---

[3] Below, the undersigned discusses Plaintiff's ostensible false arrest claim.

conviction.[4]  *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the false arrest claim—and establishing that the arresting officer lacked probable cause to arrest Plaintiff—could necessarily imply the invalidity of a future conviction because the claim is essentially a collateral attack on a criminal judgment's validity.  *See Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (*citing Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[5]

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes.  *See Kato*, 549 U.S. at 393-94.  Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or

---

[4] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

[5] *See also Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's claim is *related to* rulings that will likely be made concerning his pending charge. Accordingly, the Court should stay this claim pending the outcome of Plaintiff's ongoing criminal prosecution.[6]

**6. Judicial Immunity**

Plaintiff claims that Judge Caldwell told him in court that "the arresting officer was not responsible for the gathering of 'exculpatory' evidence . . . ." [doc. # 11, p. 3 (emphasis removed)].

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It "applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (*citing Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). There are only two exceptions: (1) non-judicial

---

[6] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.* "Immunity may be applied even if one or more of these factors is not met." *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

Here, Plaintiff essentially claims that Judge Caldwell offered an erroneous statement of law in a court proceeding. However, managing or presiding over court proceedings[7] and opining on the law[8] are all acts normally performed by a judge. Plaintiff alleges that the judge acted in court, his claim clearly 'centers around' proceedings before the judge, and nothing indicates that the alleged act arose outside of a visit to the judge in his official capacity.[9] Further, Plaintiff does not allege that the judge acted in the complete absence of all jurisdiction. Plaintiff alleges

---

[7] *See Bradley v. Salvant*, 2020 WL 1896550, at *1 (5th Cir. Apr. 16, 2020); *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998).

[8] *See Hosseini v. Sharp*, 216 F. App'x 392, 392 (5th Cir. 2006) (holding, where a judge allegedly provided legal advice to a litigant, that the judge's action was "clearly judicial in nature . . . .").

[9] *See Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all jurisdiction,' as required to overcome judicial immunity.").

that the judge's legal opinion was erroneous, but "immunity is not affected by the alleged magnitude of the judge's errors or the mendacity of his acts." *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997); *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act . . . ").

Accordingly, Judge Caldwell is entitled to absolute judicial immunity. The Court should dismiss this claim.

**7. State Actor**

Plaintiff claims that he has "been denied competent legal assistance by [his] attorney[,]" Cleophus Washington. [doc. #s 1; 14, p. 4]. He claims that Washington: (1) failed to file necessary motions for his defense; (2) has only seen him three "times at the courthouse for only 5 to 10 minutes each time"; (3) has not asked Plaintiff to recount his version of events; (4) has only presented the District Attorney's plea offer; and (5) agrees to continuances. [doc. #s 1; 14, p. 4].

To state a claim under Section 1983, a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).

Here, Attorney Washington did not act under color of state law. *See Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982) (finding, where the plaintiff alleged that his counsel was ineffective "for allowing two fundamentally defective indictments to be prosecuted against him," that counsel was performing a lawyer's traditional function); *Amir-Sharif v. Dallas Cty. Pub. Defs. Office*, 233 F. App'x 364, 365 (5th Cir. 2007) (finding, where a plaintiff was concerned

11

with the "quality of legal assistance being provided to him by appointed counsel and the public defender[,]" that "the attorney defendants . . . are not state actors for § 1983 purposes."); *Linn v. Saitin*, 575 F. App'x 531, 532 (5th Cir. 2014) (affirming, where the plaintiff alleged that a public defender and her supervisor rendered ineffective assistance, that the defendants were not state actors).[10]

Plaintiff alleges cursorily that Washington "works for the D.A. instead of for" Plaintiff. [doc. # 14, p. 4]. This conclusory allegation is insufficient to classify Washington as a state actor. Plaintiff does not plausibly allege an actual conspiracy; he does not describe an agreement or concerted action to commit an illegal act. *See Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) (finding, where the plaintiff conclusorily alleged that his "court-appointed attorney conspired with the judge and prosecutor when the attorney agreed to proceed upon an altered indictment, when he gave Mills erroneous legal advice and when he refused to provide Mills with an opportunity to examine personally certain exculpatory evidence[,]" that the allegations reflected "independent judgments and actions of the private attorney in the course of representing the defendant during trial.").[11]

---

[10] *See also O'Brien v. Colbath*, 465 F.2d 358 (5th Cir. 1972) (holding that the ineffective assistance of a public defender in a criminal case does not raise a claim cognizable under Section 1983 because no "state action" is involved and because Section 1983 was not intended as a "vehicle for prosecuting malpractice suits against court-appointed attorneys."); *U.S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976) ("The court-appointed attorney, like any retained counsel, serves his client. He represents the client, not the state. The ancillary facts that the court has a hand in providing counsel, and that the attorney selection board in Orleans Parish obtains its authority from statute, do not alter the attorney-client relationship. That relationship is our concern here. Accordingly, the district court correctly disallowed any [Section] 1983 claim raised by Plaintiff-Appellant, since the situation presents no state action.").

[11] *See also Linn*, 575 F. App'x at 532 (rejecting the plaintiff's argument that his counsel acted in concert with the prosecution because the plaintiff "made only generalized allegations of concerted action, which [were] insufficient to establish the existence of a conspiracy."); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (a plaintiff's "mere characterization" of a

The Court should dismiss Plaintiff's claims against Attorney Washington.

**8. Excessive Force**

Plaintiff alleges that Deputy Ervin called Plaintiff to his patrol car, where he searched Plaintiff and found a knife in Plaintiff's pocket. [doc. # 14, p. 3]. Plaintiff claims: "Upon finding this knife, he then grabbed [Plaintiff] around the neck and throat and then violently slammed [Plaintiff] to the asphalt." *Id.* Ervin handcuffed Plaintiff and placed him in the patrol car. [doc. # 14, p. 3].

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (internal quotation marks and quoted source omitted). "Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, 'we do require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.'" *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (*quoting Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999), *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999)).

Here, Plaintiff does not allege that he suffered any injury from the alleged use of force.[12] Accordingly, the Court should dismiss this claim. *See McKinney v. Painter*, 2022 WL 287558,

---

defendant's conduct "as conspiratorial or unlawful [does] not set out allegations upon which relief can be granted."); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has presented no specific facts showing an agreement between the private defendants and any state actor in this case.").

[12] The undersigned instructed Plaintiff to "provide a description of the injury or harm, if any, sustained as a result of reach violation." [doc. # 10, p. 2].

13

at *2 (5th Cir. Jan. 31, 2022) (affirming the dismissal of an excessive force claim "for failure to state a claim and as frivolous" where, "*critically*," the plaintiff failed to allege "that he suffered any injuries as a result" of jailers choking him and using a weapon on him) (emphasis added); *Smallwood v. Castillo*, 289 F. App'x 803, 805 (5th Cir. 2008) (affirming dismissal on preliminary review where the plaintiff did "not allege a de minimis injury" and therefore failed "to present a basis for an Eighth Amendment claim of excessive force."); *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006).

### 9. Deputy R.C. Tindall

On April 25, 2022, Plaintiff filed a pleading, in which he essentially claimed that Deputy R.C. Tindall failed to complete and mail his 'accounts officer page' to this Court. [doc. # 5, p. 3]. Plaintiff needed to file the accounts officer page to finalize his application to proceed in forma pauperis. The same day, Plaintiff filed a completed accounts officer page, signed by Deputy Tindall. [doc. #s 6; 6-1]. On April 29, 2022, the Court granted Plaintiff's application to proceed in forma pauperis. [doc. # 7].

To succeed on claim that a defendant violated a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here Plaintiff's access-to-court claim is premature. Plaintiff has secured in forma

pauperis status and has not lost the opportunity to pursue his claims *because of* Tindall's action (or inaction). *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). In other words, he can still pursue the relief he seeks because his claims are pending. Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." *See Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs' underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[13]

The Court should dismiss this claim.

**10. Monroe Police Department**

Plaintiff names Monroe Police Department as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Monroe Police Department does not qualify as a juridical person. *See Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002) ("[A]

---

[13] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

sheriff's office is not a legal entity capable of being sued . . . ."); *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. Ct. App. 1977). Accordingly, the Court should dismiss Plaintiff's claims against Monroe Police Department.

**11. Ouachita Parish District Attorney's Office**

Plaintiff claims that the Ouachita Parish District Attorney's Office violated his right to a speedy trial. [doc. # 14, p. 6]. He explains that Assistant District Attorney Farshian sought numerous continuances "instead of allowing 'due process' to take effect . . . ." *Id.*

Plaintiff does not state a plausible claim. "For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999). In that respect, "municipalities cannot be held liable for constitutional torts under § 1983 'on a *respondeat superior* theory,' but they can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (*quoting Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (internal citation omitted)).

Here, Plaintiff's claim against the District Attorney's Office is entirely premised on vicarious liability, namely the actions (or omissions) of Assistant District Attorney Farshian. Plaintiff does not allege: that this is the rare circumstance in which a final policymaker performed the specific act that violated his constitutional rights; that the presence (or absence) of a policy, pattern, practice, custom, or procedure violated, or caused a violation of, his constitutional rights; or that the need to take action to control the agents of the local governmental entity is so obvious that the final policymaker can reasonably be said to have been

deliberately indifferent. *See Burge*, 187 F.3d at 471; see *also Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

The Court should dismiss Plaintiff's claim against the Ouachita Parish District Attorney's Office.

**12. Prosecutorial Immunity**

As above, Plaintiff claims that Assistant District Attorney Farshian sought numerous continuances "instead of allowing 'due process' to take effect . . . ." [doc. # 14, p. 6]. He also alleges that Farshian has delayed responding to his "Motion of Discovery, Disclosure and Inspection and for Bill of Particulars. [sic]." *Id.* He suggests that by seeking continuances and delaying responding to his motion, Farshian violated his right to a speedy trial.

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006). Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Loupe v. O'Bannon*, 824 F.3d 534,

539 (5th Cir. 2016).

Here, Farshian is entitled to absolute prosecutorial immunity with respect to Plaintiff's speedy-trial allegation. *See Hunter v. James*, 717 F. App'x 500, 501 (5th Cir. 2018) ("Watkins is absolutely immune from § 1983 immunity with respect to Hunter's speedy trial claim."); *Green v. New Orleans Police Dep't*, 2013 WL 5739076, at *4 (E.D. La. Oct. 22, 2013) (finding, where the plaintiff alleged that a district attorney failed, under LA. CODE CRIM. PROC. ANN. art. 701, to prosecute him in a timely manner, that the district attorney was immune).

Under Plaintiff's allegations, Farshian acted only in the course of her role as a governmental advocate. Accordingly, the Court should dismiss Plaintiff's claim as frivolous and because Plaintiff seeks monetary relief from a defendant immune from such relief.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Ronald Gerald Metcalf, Jr.'s, false arrest claim against Deputy Terrence Levelle Ervin be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with this claim, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claim would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning this particular claim (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and
>
> d. Defendant shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be

**DISMISSED** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief against defendants immune from such relief.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 29th day of June, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge